J-S40007-22
J-S40008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PLUMMER | : | |
| | : | |
| Appellant | : | No. 1623 EDA 2021 |

Appeal from the PCRA Order Entered July 8, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003690-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PLUMMER | : | |
| | : | |
| Appellant | : | No. 2070 EDA 2021 |

Appeal from the PCRA Order Entered July 8, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0015155-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PLUMMER | : | |
| | : | |
| Appellant | : | No. 262 EDA 2022 |

Appeal from the PCRA Order Entered July 8, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003689-2014

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

J-S40007-22
J-S40008-22

MEMORANDUM BY PANELLA, P.J.:                    **FILED MARCH 16, 2023**

William Plummer appeals, *pro se*, from the orders dismissing his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] **See** 42 Pa.C.S.A. §§ 9541-9546. Plummer raises numerous ineffective assistance of counsel claims. We affirm.

This Court previously set forth the underlying facts as follows:

> On September 29, 2013, at around 1:00 a.m., Ronald Elliot left his girlfriend, Kandis Fowler's, home at 3601 Conshohocken Avenue and went to the apartment building's parking lot. [Plummer] and two other men, holding fake police badges, jumped out of the bushes and yelled "Freeze, Police." Elliot ran out of the parking lot and across the street as the three men chased him. [Plummer] stopped pursuing Elliot and acted as a lookout standing on the sidewalk on the parking lot side of the street while the other two men caught Elliot across the street. After the two men hit Elliot four or five times in the head with a firearm, cutting him on the head, the two men took Elliot's watch, money and car keys. The men joined back up with [Plummer] and all three men ran to the parking lot. Elliot saw [Plummer] drive off in Fowler's Ford Expedition.

---

[1] Plummer filed timely appeals at 1623 EDA 2021 and 2070 EDA 2021. At 262 EDA 2022, Plummer filed a *pro se* notice of appeal from the July 8, 2021 order on January 11, 2022, which would make the appeal untimely. However, the PCRA court docket does not indicate that the July 8, 2021 order was served on Plummer or the date of service of the order. **See** Pa.R.Crim.P. 114(B)(1) ("A copy of any order or court notice promptly shall be served on … the party if unrepresented."); Pa.R.Crim.P.114(C)(2)(c) (requires the criminal docket entries to include "the date of service of the order"); **see also** Pa.R.Crim.P. 907(4) (providing that a PCRA court order dismissing a petition without a hearing "shall be filed and served as provided in Rule 114."). Therefore, we consider the appeal at 262 EDA 2022 to be timely. Furthermore, because these appeals have a substantially similar procedural history and raise the same legal questions, we consolidate them *sua sponte* and will consider them together.

- 2 -

On February 5, 2014, after [Plummer] had been arrested and charged with [the] robbery of Elliot, Elliot received multiple phone calls from [Plummer]. [Plummer] threatened Elliot, explaining that if Elliot attended the next court date [Plummer] was going to firebomb the homes of Elliot's mother, girlfriend, and grandparent and kill Elliot….

On February 9[,] 2014, Valerie and Russell Fowler, Kandis Fowler's parents, were living in a row home on Washington Lane. At about 4:00 a.m., Valerie Fowler heard a "bang" and smelled smoke. Russell Fowler went downstairs and saw a small fire in the back yard. After the fire was extinguished, Russell Fowler noted that the first floor back window was broken and saw a bottle with a wick in it in the back yard.

Detective Timothy Brooks of the Philadelphia Police's Bomb Disposal Unit and an expert in arson explosives arrived at the Fowler's home on Washington Lane shortly after the fire was extinguished. Outside the back of the house, Detective Brooks observed two bottles with wicks in them, one intact and the other shattered, which he believed to be Molotov cocktails. Detective Brooks observed strike marks on the back window and a broken bottle at the bottom of the basement steps that indicated that a Molotov cocktail had struck the house and fallen to the ground. The intact bottle contained liquid and a cloth wick, which smelled of gasoline. Detective Brooks recovered the bottles, wicks, and liquid.

On February 9, 2014, Detective Kevin Sloan requested that Philadelphia prison authorities search [Plummer's cell]. The prison authorities recovered a cell phone in [Plummer's] cell. According to Cricket Communications' records, the cell phone recovered from [Plummer's] cell had been used to call Elliot four times on February 5, 2014.

[Plummer] testified on his own behalf. [He] asserted that in the first week of September 2013, Elliot gave [Plummer] $15,000 to purchase drugs for him. [Plummer] kept the money but did not purchase the drugs. [Plummer] asserted that on September 29, 2013, he was not on Conshohocken Avenue but instead was in Norristown. [Plummer] explained that he was unable to run because he was shot many years before. [Plummer] admitted that he had called Elliot but claimed the call was to arrange to return Elliot's money in exchange for Elliot not appearing at trial.

[Plummer] was charged with numerous crimes at the above-captioned docket numbers. Ultimately, a jury convicted him of one or more counts each of conspiracy, aggravated assault, robbery, robbery of a motor vehicle, arson, risking a catastrophe, intimidation of a victim, retaliation against a victim, and contraband (non-controlled substance). [Plummer] received an aggregate sentence of thirty to sixty years of incarceration. On direct appeal, this Court affirmed, and our Supreme Court denied [Plummer]'s petition for allowance of appeal. **See Commonwealth v. Plummer**, 153 A.3d 1110 (Pa. Super. 2016) (unpublished memorandum), **appeal denied**, 159 A.3d 938 (Pa. 2016).

[Plummer] filed a timely *pro se* PCRA petition, and counsel was appointed. Counsel filed an amended petition, including only four of the many claims that [Plummer] raised in his *pro se* filings. Displeased by the omissions, [Plummer] applied for the appointment of new counsel. [Plummer] also filed a letter in which he contended that PCRA counsel had a duty to pursue each and every claim that [Plummer] wished to raise, or to file "a hybrid [**Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) letter" explaining why there was no merit in the claims he chose not to include in the amended petition. Citing [Plummer's] lack of faith in his representation, counsel sought to withdraw and have the PCRA court appoint new counsel or hold a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998)…. For reasons not apparent from the certified record, the PCRA court denied the request without conducting a **Grazier** hearing.

[Plummer] next filed a motion to proceed *pro se*, which the PCRA court addressed at the outset of the hearing it had scheduled on the claims raised in counsel's amended petition. [Plummer] informed the court that he did not want to represent himself, but rather he desired to have counsel pursue all of the claims that he wished to raise. The PCRA court deferred addressing that issue, instead having PCRA counsel conduct the questioning of witnesses in connection with the issues raised in the counseled petition. At the end of the hearing, the PCRA court scheduled another date for [Plummer] to present additional witnesses.

In between hearings, [Plummer] filed another motion to proceed *pro se*, citing "irreconcilable differences and the lack of communication on strategy." At the second PCRA hearing, the PCRA court did not conduct a ***Grazier*** hearing or otherwise address [Plummer's] renewed request for self-representation. Instead, counsel continued to represent [Plummer] at the second hearing, presenting and cross-examining witnesses. Following the close of evidence and the arguments of counsel, the PCRA court invited [Plummer] to state "what it is that you want preserved for the record[.]" [Plummer] indicated, *inter alia*, that he wanted the *pro se* PCRA claims that counsel omitted from the amended petition to be "exhausted." At that point, the PCRA court conducted a colloquy to determine whether [Plummer] wished to make a knowing and voluntary waiver of his right to counsel. The PCRA court [dismissed the amended PCRA petition. Further, the PCRA court] concluded that [Plummer] desired to proceed *pro se* on appeal, and ultimately entered an order allowing counsel to withdraw.

***Commonwealth v. Plummer***, 2042 EDA 2018 (Pa. Super. filed Apr. 1, 2020) (unpublished memorandum at 2-5) (citations and footnote omitted).

On appeal, this Court vacated the order, finding that the PCRA court erred in failing to conduct a ***Grazier*** hearing when the court was first presented the issue of Plummer's desire to raise all of his PCRA claims. Accordingly, this Court remanded for Plummer to file a *pro se* amended PCRA petition, raising the claims he wished the PCRA court to resolve. ***See id.*** (unpublished memorandum at 15-16).

On remand, Plummer filed several amended PCRA petitions, raising ineffective assistance of trial, appellate, and PCRA counsel claims. The PCRA court issued a Pa.R.Crim.P. 907 notice. Plummer filed a response. Thereafter, the PCRA court dismissed Plummer's petition. These timely appeals followed.

- 5 -

On appeal, Plummer raises a voluminous amount of ineffectiveness claims regarding his trial, appellate, and PCRA counsel, and claims of error by the PCRA court. *See* Appellant's Brief at 5-6 (raising 8 issues); Appellant's Supplemental Brief at 4-9 (raising 22 issues labeled A through V). In essence, Plummer argues that (1) trial counsel and appellate counsel were ineffective for failing to challenge the trial court's jury instruction as to criminal conspiracy; (2) trial counsel was ineffective for failing to file a motion to suppress the cell phone found in his prison cell; (3) trial counsel was ineffective for failing to investigate a corroborating witness who was Plummer's cellmate; (4) trial counsel was ineffective for failing to challenge testimony or evidence relating to the cellphone found in his prison cell; (5) trial counsel was ineffective for not seeking discovery from the Commonwealth regarding his character; (6) PCRA counsel was ineffective for failing to raise numerous claims; and (7) the PCRA court erred in failing to order him to file a Rule 1925(b) concise statement so that it could more fully address his claims. *See* Appellant's Brief at 12-18; Appellant's Supplemental Brief at 10-51.

Our standard of review regarding a PCRA court's order "is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Rizvi***, 166 A.3d 344, 347 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no

support for the findings in the certified record." ***Commonwealth v. Garcia***, 23 A.3d 1059, 1061 (Pa. Super. 2011) (citation omitted).

Further, to succeed on an ineffectiveness claim, Plummer must demonstrate by a preponderance of evidence that "(1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction." ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). Counsel is presumed to be effective, and the burden is on Plummer to prove otherwise. ***See Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***See Commonwealth v. Montalvo***, 244 A.3d 359, 368 (Pa. 2021).

To be eligible for relief on a claim that appellate or PCRA counsel was ineffective, the petitioner "must meet all three prongs of the . . . test for ineffectiveness" for each counsel. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1128 (Pa. 2011) (citation omitted). "A failure to satisfy any of the three prongs of the [ineffectiveness] test requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of" appellate or PCRA counsel. ***Id.*** (citation omitted).

First, Plummer claims that trial and direct appeal counsel were ineffective for failing to argue that the court improperly instructed the jury in response to a jury question on the criminal conspiracy charge. ***See*** Appellant's

Brief at 12-14. More specifically, Plummer argues that trial counsel was ineffective for failing to object to the instruction, baldly claiming that the instruction relieved the Commonwealth of its burden to prove each element of the crimes charged beyond a reasonable doubt. *See id.* at 12. Plummer asserts that the trial court failed to explain to the jurors that they had to find the Commonwealth had proved every element of the robbery charges before they could find him guilty. *See id.* at 13. According to Plummer, his claim has arguable merit, neither counsel had a reasonable basis to fail to raise this issue, and he was clearly prejudiced. *See id.* at 13-14. Plummer also claims that PCRA counsel was ineffective for failing to obtain affidavits from trial and appellate counsel to determine whether either counsel had a reasonable basis for their failure to raise the jury instruction issue. *See id.* at 13.

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citations and brackets omitted).

During deliberations, the jury asked the trial court: "If we find that the defendant is guilty of criminal conspiracy the night of the carjacking, does that

- 8 -

make him guilty of the other charges?" N.T. 2/12/15, at 9. The trial court

responded as follows:

> I want to start off by telling you that to reemphasize – not reemphasize, but to reiterate that there are two different types of conspiracy involved in this case. There is a conspiracy as a type of liability, and that was when I talked to you about how you can be responsible for the crime even if you didn't physically commit it under a conspiratorial liability and/or accomplice liability.
>
> Then I said that the crime of conspiracy in and of itself is a crime in Pennsylvania. And you have separate incidents in this case. So the simple answer is let's talk about the one incident in which the defendant is charged with the robbery, the carjacking, conspiracy, and the PIC.
>
> You can have a conspiracy for that evening, all right, and we will talk about those incidents, but I want to make it clear that that conspiracy would not jump ahead to the other incidents. There would have to either be separate conspiratorial liability for the other charges, the intimidation, the retaliation, the arson, and the conspiratorial liability, or the defendant has been charged with the crime of conspiracy, and that's why there's two separate charges of conspiracy.
>
> Now, you may have already figured that out and that may not be exactly what you were asking, but I wanted to preface my reading of the criminal conspiracy again to just make it very clear to you that if -- you have to look on the specific date to see if there was a conspiracy.
>
> So you have conspiratorial liability. Now we're going to get to the crime of conspiracy. Understand that the elements are the same, okay. So what it really breaks down to is you can be convicted on a conspiratorial liability without ever being charged with conspiracy, but in this particular case the defendant has been charged with conspiracy.
>
> So in order to determine whether or not he's guilty of -- we refer to it as the underlying crime or crimes, so in this case you've specifically asked about carjacking, what you have to do is make sure that the object of the crime if there's a conspiracy the specific crime that you're evaluating.

So, in other words, I don't know what facts you've determined, and I'm not going to speculate on that because that's not my job, but you have to remember make sure that the object crime or the agreement is a specific crime that you're considering.

So in order -- let me use your example of carjacking. In order to convict the defendant of criminal conspiracy, you would have to determine that there was an agreement and that there was a specific agreement to commit the carjacking. If you look at the robbery, then you have to determine whether there was a specific agreement to commit the robbery. And that one person or more took a substantial step in furtherance of the agreement.

In other words, there has to be the common understanding and it's a firm common understanding that the particular crime would be committed.

So, remember, there's the agreement and then the defendant cannot be convicted of conspiracy unless he or a fellow conspirator does something more, an overt act. So as long as someone does an overt act in the furtherance of the conspiracy, that means something that would further the goal of the conspiracy, that shows that the parties have a firm agreement and they're not just talking about or thinking about a crime, as I said to you before, the act has reached the action stage.

So in this particular case remember what happens is under conspiratorial liability the defendant becomes responsible for the actions of the other individuals for the specific crime.

Then when you look at the charge of conspiracy, it's a whole separate charge itself. So the law says it's not just a theory of liability. In Pennsylvania we're making the agreement and the action in furtherance of the agreement an additional charge other than just let's say the robbery or the carjacking.

*Id.* at 9-14.

Contrary to Plummer's assertion of error, our review of the record reveals that, when taken in its entirety, the jury instruction was specifically tailored to answer the question and appropriately reflected the law and

- 10 -

accurately described the differences between conspiratorial liability and the conspiracy. Importantly, during the original charge, the trial court also instructed the jury on the robbery and robbery of a motor vehicle charges. *See id.* at 200-02. Moreover, the trial court has provided the jury with an extensive instruction for the conspiracy charges in its original charge. *See* N.T., 2/11/15, at 197-200, 202-06. It is presumed that the jury will "follow the trial court's instructions," *Commonwealth v. Vucich*, 194 A.3d 1103, 1113 (Pa. Super. 2018) (citation omitted), and Plummer takes no issue with the original instructions. Accordingly, Plummer fails to demonstrate that there was arguable merit to his underlying claim or that any of the verdicts would have been different with any additional charge. Therefore, trial counsel was not ineffective for failing to object to the trial court's instruction, and by extension, appellate counsel was not ineffective. *See Chmiel*, 30 A.3d at 1128 (noting that "if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail"). Likewise, Plummer's claim that PCRA counsel was ineffective for failing to obtain affidavits is also without merit, as trial and appellate counsel were not ineffective. *See id.*

Next, Plummer argues that trial counsel was ineffective for failing to suppress the cell phone seized from his jail cell, and the information obtained from the phone. *See* Appellant's Brief at 14-15, 16; *see also* Appellant's Supplemental Brief at 34-35. Plummer claims the search of his jail cell was

conducted without a warrant and in violation of his Fourth Amendment rights.

*See* Appellant's Brief at 15. Plummer therefore contends that the contents of

his phone is also subject to suppression. *See id.*

The PCRA court focused on Plummer's status as a prisoner in concluding

trial counsel was not ineffective:

> [Plummer] was incarcerated at Curran-Fromhold Correctional Facility ("CFCF") at the time he used an illegal cell phone to threaten Elliot. After Elliot informed the police that [Plummer] was the individual who called and threatened him, the police requested that prison officials search [Plummer's] prison cell. When prison officials searched his cell, they confiscated his illegal cell phone, which he was not entitled to possess under any circumstances. See 18 Pa.C.S.[A.] § 5123[(c.2)]. After correctional officers turned the cell phone over to police officers, officers obtained a valid search warrant and pulled the call records from Cricket Wireless. These records indicated that the phone was used to call Elliot four different times. …
>
> [Plummer] has not shown that there was a reasonable basis for counsel to litigate a suppression motion. There was nothing improper with law enforcement's search and seizure of [Plummer's] cell phone and any motion to suppress it would have been frivolous. The applicability of both the federal and Commonwealth constitutional protections against unreasonable search and seizure to prisoners is limited. ***Commonwealth v. Moore***, 928 A.2d 1092, 1099 (Pa. Super. 2007) (citing ***Hudson v. Palmer***, 468 U.S. 517 (1984)). Additionally, an incarcerated individual has a limited right to privacy while in prison. ***Moore***, 928 A.2d [at 1102] …; ***DeBlasio v. Pignoli***, 918 A.2d 822 (Pa. [Cmwlth]. 2007) …. Courts have consistently upheld these limitations on a prisoner's right to privacy because of the need to ensure the safety and operational function of the prison. ***Commonwealth v. Boyd***, 580 A.2d 393, 394 (Pa. [Super.] 1990).
>
> Prison officials' search of [Plummer's] prison cell was justified because of the need to ensure the safety and function of the prison. Police officers gave prison officials credible information that [Plummer] possessed an illegal cell phone and was using it to

threaten another individual. Because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell," trial counsel had no basis to litigate a suppression motion, and the claim fails. *See Hudson*, 468 U.S. at 517 ….

[Plummer] claims that counsel failed to present evidence that he was incarcerated at the time when he threatened Elliot. This claim is belied by the record. It was clear from trial counsel's opening statement and the evidence presented at trial that [Plummer] was incarcerated at CFCF at the time Elliot's house was firebombed. N.T.[,] 2/10/15[,] at 60. Thus, his claim fails.

PCRA Court Opinion, 7/8/21, at 6-8.

We agree with the sound reasoning of the PCRA court. *See id.*; *see also Commonwealth v. Watley*, 153 A.3d 1034, 1046 (Pa. Super. 2016) (finding that because the claim that the evidence should have been suppressed was without merit, counsel was not ineffective for failing to file a motion to suppress). Therefore, Plummer's ineffectiveness claim is without merit.[2]

Plummer also contends trial counsel was ineffective for failing to obtain exculpatory evidence. *See* Appellant's Brief at 16. Plummer's claim in its entirety is as follows:

Trial counsel's failure to investigate or interview potential corroborating witness Desean Dobbins who was cell mates with [Plummer] at the time of these calls to uncover exculpatory evidence that would have supported [Plummer's] trial testimony. *United States v. Gray*, 878 F.2d 702 (3rd Cir. 1989)[.] *See also*

---

[2] Plummer also raised a claim that PCRA counsel was ineffective for failing to raise this claim. *See* Appellant's Supplemental Brief at 34. However, as noted below, he fails to provide any pertinent analysis to support his ineffectiveness claim in this regard. *See* Pa.R.A.P. 2119(a). Accordingly, this claim is waived.

> ***Commonwealth v. Mabie***, 359 A.2d 369, 374 (Pa. 1976).
> Counsel's actions had no reasonable basis and prejudice resulted
> from counsel's failure to investigate, interview potential witness
> Desean Dobbins, had trial counsel done so, Desean Dobbins would
> have been called to [testify] in-order to corroborate [Plummer's]
> trial testimony.

***Id.***

While recognizing that this Court can liberally construe a *pro se* brief, we conclude that Plummer's argument is woefully inadequate. ***See Commonwealth v. Ray***, 134 A.3d 1109, 1114-15 (Pa. Super. 2016) (stating that "a *pro se* litigant must still comply with the Pennsylvania Rules of Appellate Procedure." (citation omitted)). Plummer merely provides conclusory statements that counsel was ineffective without indicating whether Dobbins was available to testify on his behalf or the contents of his alleged corroborative statements. ***See Commonwealth v. Spotz***, 896 A.2d 1191, 1250 (Pa. 2006) ("[B]oilerplate, undeveloped" arguments regarding ineffective assistance of counsel are "insufficient to establish an entitlement to post-conviction relief." (citation omitted)). Therefore, Plummer waived this claim. ***See Commonwealth v. Paddy***, 15 A.3d 431, 444 (Pa. 2011) (stating that when an appellant fails "to set forth all three prongs of the ineffectiveness test and [to] meaningfully discuss them, he is not entitled to relief, and we are constrained to find such claims waived for lack of development") (citation omitted)).

Plummer also contends that trial and appellate counsel were ineffective for failing to challenge the evidence obtained from the cell phone, because it

was not properly authenticated and was unreliable. ***See*** Appellant's Brief at 16-17. However, Plummer fails to meaningfully discuss the three prongs of the ineffectiveness test; therefore, we conclude that this claim is also waived. ***See Paddy***, 15 A.3d at 444; ***Spotz***, 896 A.2d at 1250.

Next, Plummer baldly argues that "[t]rial counsel provided ineffective assistance where he failed to demand reciprocal discovery regarding any negative character evidence during appellant's trial testimony." Appellant's Brief at 17. Again, Plummer has not provided any other argument and does not meaningfully discuss the three prongs of the ineffectiveness test; as a result, the claim is waived. ***See Paddy***, 15 A.3d at 444; ***Spotz***, 896 A.2d at 1250.

Additionally, Plummer asserts that the PCRA court erred in failing to order him to file a concise statement so that it could address his numerous ineffective assistance of PCRA counsel claims in an opinion. ***See*** Appellant's Brief at 17-18. According to Plummer, the PCRA court did not discharge its duty to address all of his claims. ***See id.*** at 18.

Here, Plummer supports his argument by citing to case law related to counsel's withdrawal from PCRA representation under ***Turner***/***Finley***, claiming that the PCRA court must conduct an independent examination of the record. Such an argument does not in any way establish that the PCRA court did not address all of his *pro se* claims in this case or that the PCRA court had a legal duty to order the filing of a Pa.R.A.P. 1925(b) concise statement. In

fact, Plummer neglects to acknowledge that Rule 1925(a) opinions are merely advisory and are issued for the benefit of appellate review. *See Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1075 (Pa. Super. 2014); *see also Commonwealth v. Lobiondo*, 462 A.2d 662, 665 n.4 (Pa. 1983) (noting that a trial court's Rule 1925(a) opinion "is intended as an aid to the reviewing appellate court and cannot alter a previously entered verdict"). Because Plummer fails to demonstrate that the PCRA court did not consider his claims prior to dismissing his petition, he is not entitled to relief on this claim.[3]

We now turn to Plummer's supplemental brief, in which he raises 22 claims relating to PCRA counsel's ineffectiveness. As a preliminary matter, our Supreme Court recently held that the proper procedure for enforcing the right to effective PCRA counsel is by "allowing a petitioner to raise claims of ineffective PCRA counsel at the first opportunity [(after obtaining new counsel or acting *pro se*)], even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 405 (Pa. 2021).

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such

---

[3] We additionally note that Plummer argues our Supreme Court "condemned the wholesale adoption of a party's brief in lieu of filing a PCRA court opinion on the grounds that the independent role of the judiciary is not properly served absent some autonomous judicial expression of the reasons for dismissing the PCRA petition." Appellant's Brief at 18. However, Plummer cites to no portion of the PCRA court's opinion wherein the PCRA court adopted a party's brief. Therefore, this claim is without merit.

> claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

*Id.* at 402 (citations, brackets, and quotation marks omitted). In other words, "appellate courts will have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record." *Id.* at 403.

We acknowledge that Plummer timely raised his PCRA counsel's ineffectiveness claims in his PCRA petitions upon remand by this Court. However, Plummer is not entitled to relief on these claims or further remand to develop the record. Indeed, for his claims labeled A through T and V, Plummer merely raises bald allegations of PCRA counsel's ineffectiveness for failing to raise multiple claims, and mostly cites to case law regarding the general standards applicable to an ineffectiveness assistance of counsel claim without any further analysis establishing ineffectiveness based upon the discrete claims. *See* Supplemental Appellant's Brief at 10-48, 51; *see also* Pa.R.A.P. 2119(a) (noting that an argument must include a pertinent discussion and citation to authorities). To that end, Plummer has failed to satisfy any of the three prongs of the ineffectiveness test for each counsel, which requires a rejection of his claim. *See Chmiel*, 30 A.3d at 1128; *Spotz*,

- 17 -

896 A.2d at 1250.[4] Accordingly, based upon this argument and record, we conclude that Plummer's PCRA counsel ineffectiveness claims are without merit. **See Bradley**, 261 A.3d at 402 (noting that boilerplate allegations of ineffectiveness do not entitle a petitioner to relief); **see also Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020) (stating that this Court will not act as counsel or develop arguments for appellant, and that raising issues without analysis or citation to pertinent authority precludes appellate review of the claim).

For his claim at U in the supplemental brief, Plummer contends that PCRA counsel rendered ineffective assistance of counsel by not asserting trial counsel's ineffectiveness in failing to object to inflammatory comments by the prosecution during closing argument. **See** Appellant's Supplemental Brief at 48-50. Plummer argues that the prosecution made a joke about his disability. **See id.** at 48 (citing N.T., 2/11/15, at 143 ("I don't think he can't walk as much as he wants you to think as he sort of stumbles his way up to the chair, but he probably can't run.")). According to Plummer, the central issue for the jury to decide was the credibility of the witnesses, and prosecutor's statement influenced the jury. **See id.** at 49-50. Plummer also claims that there was no

_____

[4] We additionally note that Plummer's claims J, R, T, and V in his supplemental appellate brief merely incorporate prior sections of his argument, and he does not articulate any new assertions. **See Commonwealth v. Briggs**, 12 A.3d 291, 342 (Pa. 2011) (stating that the appellate rules do not allow incorporation by reference arguments and it "is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief").

reasonable basis for either counsel's failure to raise the issue, and that he was prejudiced by the failure to object to the statement. ***See id.*** at 50.

> A prosecutor's arguments to the jury are generally not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.
>
> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

***Commonwealth v. Solomon***, 25 A.3d 380, 383 (Pa. Super. 2011) (citation and brackets omitted).

Here, the prosecutor made the statement in the context of the facts of the case, noting that Plummer stopped chasing Elliot and allowed his two cohorts to chase Elliot because Plummer cannot run. ***See*** N.T., 2/11/15, at 143. Importantly, the prosecutor emphasized that Plummer admitted that he could not run. ***See id.*** The statement cited by Plummer does not in any way indicate that the prosecutor was joking about Plummer's disability. Therefore, the contested statement was proper in the context of the evidence of the case and Plummer's claim that trial counsel was ineffective does not have arguable merit. ***See Solomon***, 25 A.3d at 383. Likewise, Plummer fails to establish that this single statement prejudiced him where the evidence established that as Elliot approached the vehicle in question, Plummer and two other men

jumped out from behind some nearby bushes and confronted Elliot; the two men, but not Plummer, chased Elliot across the street before they were able to catch him and take the car keys from him; and Plummer drove the car away from the scene. In light of the foregoing, Plummer's ineffectiveness claims regarding trial and PCRA counsel are without merit. **See Chmiel**, 30 A.3d at 1128.

In summary, we conclude all of Plummer's claims of PCRA court error are either meritless or waived. We therefore affirm the orders dismissing his amended PCRA petition.

Orders affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 3/16/2023*